UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------X

CHRISTOPHER JONES,

        Plaintiff,

  -against-                            08 Civ. 0562

SUPERINTENDANT LUIS R. MARSHALL,
    OFFICER Q. QUICK, and OFFICER       OPINION
    R. PEREZ,

        Defendants.

------------------------------------X

A P P E A R A N C E S:

    Pro Se

    CHRISTOPHER JONES
    DIN # 94-A-3638
    Attica Correctional Facility
    639 Exchange Street
    P.O. Box 149
    Attica, New York 14011-0149

    Attorneys for Defendants

    ANDREW M. CUOMO
    Attorney General of the State of New York
    120 Broadway
    New York, NY 10271
    By:  John E. Knudsen, Esq.

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 1/19/10

**Sweet, D.J.**

Defendants Officer Quandera Quick ("Officer Quick"), and Officer R. Perez ("Officer Perez") (collectively, "Defendants") have moved, pursuant to Rule 56, Fed. R. Civ. P., for summary judgment dismissing the amended complaint of pro se plaintiff Christopher Jones ("Jones" or "Plaintiff") for violation of his constitutional rights stemming from a September 8, 2007 incident at the Sing Sing Correctional Facility ("Sing Sing").

On the facts and conclusions set forth below, Defendants' motion is granted.

I. **PRIOR PROCEEDINGS**

Plaintiff's original complaint was filed on January 23, 2008.

On December 11, 2008, Marshall's motion to dismiss was granted. Discovery proceeded with respect to the remaining defendants.

1

On September 25, 2008, Defendants were served by mail with an amended complaint (the "Complaint").[1]

The instant motion was marked fully submitted on September 23, 2009.

II. **THE FACTS**

The facts as set forth below are taken from Defendants' Statement Pursuant to Local Rule 56.1 ("Def. Rule 56.1 Stmt"), the Declaration of Christopher Jones ("Jones Decl."), and the accompanying affidavits and exhibits. The facts are undisputed except where indicated.

Plaintiff is currently an inmate in the custody of the New York State Department of Correctional Services ("DOCS"). The present dispute arises out of Plaintiff's request to use the bathroom following a September 8, 2007 visit (the "September 8 visit") by Plaintiff's mother with Plaintiff in the Sing Sing visiting room.

---

[1] Plaintiff's amended complaint named Commissioner Fischer as an additional defendant. However, the amended complaint was never filed with the Court and there exists no record of service of the Complaint on Commissioner Fischer. He is therefore not deemed a party to this action.

2

The visiting room at Sing Sing has one bathroom for inmates and two bathrooms for visitors (one for females, and one for males). There are separate bathrooms for inmates and visitors for security reasons, and inmates are not allowed to use the visitors' bathrooms. According to Plaintiff, inmates are sometimes frisked before they are allowed to use the bathroom in order to limit smuggling of contraband.

Plaintiff testified that he had been to the visiting room at Sing Sing frequently and that the inmates' bathroom in the visiting room is closed at 2:30 p.m. "some" or "most" of the time. Knudsen Decl. Ex. C at 40; id. Ex. D at 11. According to Plaintiff, there is an announcement at 2:30 p.m. that the visiting room will begin closing, with visitors leaving by 2:45 p.m. Both DOCS and Sing Sing have issued directives pertaining to the Inmate Visitor Program. Neither of these indicates that the inmates' bathroom will be closed at 2:30 p.m. or after the visitors leave the visiting room.

During the September 8 visit, Plaintiff consumed two liters of iced tea beverage that had been purchased

3

between 12:30 and 1 p.m. Plaintiff's mother left the visiting room at 2:35 p.m.

Following the departure of Plaintiff's mother, the account of the events by Plaintiff and Defendants differs considerably. According to Plaintiff, he asked Officer Quick for permission to use the bathroom, but was informed first that the bathroom was closed and then that the bathroom was not working. When Plaintiff asked when he would be allowed to use the bathroom, Officer Quick replied that he could use the bathroom whenever she felt like it and told Plaintiff to wait because an escort officer was coming to take him to his cell. Plaintiff also asked Officer Perez for access to the bathroom, but was told that he had to follow Officer Quick's decision since she was the officer in charge. Plaintiff estimates that he asked Officer Quick for permission to use the bathroom four or five times. Although Plaintiff was denied access to the bathroom, officers permitted another inmate in the visiting area to use the bathroom during that time.

Plaintiff testified that he felt the need to urinate at 2:20 p.m., began to feel pain and cramping around 3:15 to 3:30 p.m., and eventually urinated on

4

himself at 3:58 p.m.  Plaintiff was escorted back to his
cell between 4 and 4:10 p.m.

Officer Quick issued Plaintiff a misbehavior
report that day.  According to her testimony, Plaintiff
walked up to her desk after all of the visitors had left
and asked her to use the bathroom.  Officer Quick informed
Plaintiff that the bathroom was out of order and that he
would be returning to his cell shortly.  An inmate had
previously informed Officer Quick that the toilet was not
working properly, so she checked and confirmed that the
toilet was malfunctioning.  According to Officer Quick,
Plaintiff began complaining and cursing about the bathroom
being closed.  He then attempted to recruit other inmates
to join him in urinating on the floor before doing so
himself.  As a result of the misbehavior report, Plaintiff
spent five months in a special housing unit ("SHU").

Plaintiff alleges that Officer Quick threatened
to fabricate a misbehavior report for his verbal complaints
concerning the lack of bathroom access.  However, Plaintiff
also testified that he had a "pretty good relationship"
with Officer Quick while he was at Sing Sing, and she did
not cause any problems for Plaintiff other than this

incident. Knudsen Decl. Ex. C at 21. Plaintiff does not recall speaking with Officer Perez prior to the day of the incident.

On September 27, 2007, Plaintiff submitted a complaint concerning his frequent urination to DOCS' medical personnel. Urine tests were ordered for the Plaintiff at that time. In November 2007, following Plaintiff's transfer to the Upstate Correctional Facility, it was determined that Plaintiff had a urinary tract infection, which was resolved with antibiotics. Plaintiff alleges that the urinary tract infection was the result of Defendants' refusal to permit him access to the bathroom on September 8, 2007.

### III. DISCUSSION

#### A. Legal Standard

Summary judgment is granted only where there exists no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); see Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986); SCS Commc'ns, Inc. v. Herrick Co., 360 F.3d

6

329, 338 (2d Cir. 2004). The courts do not try issues of fact on a motion for summary judgment, but, rather, determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 251-52 (1986).

"The party seeking summary judgment bears the burden of establishing that no genuine issue of material fact exists and that the undisputed facts establish [its] right to judgment as a matter of law." Rodriguez v. City of New York, 72 F.3d 1051, 1060-61 (2d Cir. 1995). In determining whether a genuine issue of material fact exists, a court must resolve all ambiguities and draw all reasonable inferences against the moving party. See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986); Gibbs-Alfano v. Burton, 281 F.3d 12, 18 (2d Cir. 2002). However, "the non-moving party may not rely simply on conclusory allegations or speculation to avoid summary judgment, but instead must offer evidence to show that its version of the events is not wholly fanciful." Morris v. Lindau, 196 F.3d 102, 109 (2d Cir. 1999) (internal quotes omitted); Fletcher v. Atex, Inc., 68

7

F.3d 1451, 1456 (2d Cir. 1995) ("Finally, mere conclusory allegations or denials in legal memoranda or oral argument are not evidence and cannot create a genuine issue of fact where none would otherwise exist." (internal quotes and citation omitted)). Summary judgment is appropriate where the moving party has shown that "little or no evidence may be found in support of the nonmoving party's case. When no rational jury could find in favor of the nonmoving party because the evidence to support its case is so slight, there is no genuine issue of material fact and a grant of summary judgment is proper." Gallo v. Prudential Residential Servs., L.P., 22 F.3d 1219, 1223-24 (2d Cir. 1994) (citations omitted).

### B. Plaintiff's Denial of Bathroom Use Does Not Constitute an Eighth Amendment Violation

"To prove a violation of the Eighth Amendment, an inmate must show (1) that the deprivation alleged is objectively sufficiently serious such that the plaintiff was denied the minimal civilized measure of life's necessities, and (2) that the defendant official possessed a sufficiently culpable state of mind associated with the

8

unnecessary and wanton infliction of pain." Trammell v. Keane, 338 F.3d 155, 161 (2d Cir. 2003) (quoting Farmer v. Brennan, 511 U.S. 825, 834 (1994)) (internal quotation marks omitted).

A condition of confinement rises to the level of an Eighth Amendment violation only when "extreme deprivations" are imposed, because "routine discomfort is part of the penalty that criminal offenders pay for their offenses against society." Hudson v. McMillian, 503 U.S. 1, 9 (1992) (citing Rhodes v. Chapman, 452 U.S. 337, 347 (1981)) (objective prong satisfied only where inmate was denied "the minimal civilized measure of life's necessities"). Since the objective component of an Eighth Amendment claim is contextual, see Hudson, 503 U.S. at 8, determining whether the conditions of confinement in this matter are sufficiently serious depends on the length of the deprivation and the potential for harm. See Whitted v. Lazerson, 96 Civ. 2746 (AGS), 1998 U.S. Dist. LEXIS 7437, at *4-5 (S.D.N.Y. May 21, 1998) ("Crucial considerations in the determination of whether a particular condition is so serious as to invoke the Eighth Amendment include the duration of the condition and the potential for serious physical harm.").

9

Plaintiff asserts that his Eighth Amendment rights were violated when he was denied the right to use the bathroom for approximately 90 minutes, from 2:30 p.m. to 3:58 p.m. However, case law has established that temporary denial of a bathroom does not establish the existence of an objective injury for purposes of an Eighth Amendment claim. See, e.g. Whitted, 1998 U.S. Dist. LEXIS 7437, at *2, *7-8 (no objective injury where plaintiff had to wait 90 minutes to use the bathroom, during which time he "was forced to hold his bowel movement at painful levels, and at times partially urinated and defecated in his clothing"); Odom v. Keane, 95 Civ. 9941 (SS), 1997 U.S. Dist. LEXIS 14077, at *11-13 (S.D.N.Y. Sept. 15, 1997) (no objective injury where plaintiff's toilet did not function for a ten-hour period between 9 p.m. and 7 a.m.); Rogers v. Laird, 07-CV-668 (LEK/RFT), 2008 U.S. Dist. LEXIS 20317, at *9 (N.D.N.Y. Feb. 8, 2008) ("The temporary deprivation of restroom privileges for a three hour period does not constitute an extreme deprivation of life's necessities." (citation omitted)); Bourdon v. Roney, 99-CV-0769 (LEK)(GLS), 2003 U.S. Dist. LEXIS 3234, at *30-31 (N.D.N.Y. Mar. 6, 2003) (three hour deprivation of bathroom privileges did not constitute Eighth Amendment violation).

Plaintiff also alleges that he developed a urinary tract infection as a result of the ninety minute delay in bathroom use. Plaintiff's first complaint of frequent urination occurred nearly three weeks after the incident in the visiting room, and no evidence of medical treatment at that time exists on the record. Only in November 2007 was it determined that Plaintiff had a urinary tract infection, which was subsequently resolved with antibiotics. On this record, Plaintiff has failed to present any evidence on which a reasonable trier of fact could conclude that Plaintiff's urinary tract infection was a result of the September 8, 2007 incident.

Because Plaintiff has failed to establish the existence of an "objectively sufficiently serious injury," his Eighth Amendment claim based on his denial of bathroom access is dismissed.

**C.  Plaintiff Has Failed to Establish a Claim for Retaliation**

Plaintiff also alleges violation of his Eighth Amendment rights on the grounds that Officer Quick fabricated the misbehavior report filed against Plaintiff following the September 8, 2007 incident in retaliation for his verbal and written grievances concerning his lack of bathroom access.

As an initial matter, "a prison inmate has no general constitutional right to be free from being falsely accused in a misbehavior report." Boddie v. Schnieder, 105 F.3d 857, 862 (2d Cir. 1997). While an inmate has a due process right to a hearing before being deprived of a liberty interest based on a misbehavior report, see id., Plaintiff has not alleged that his disciplinary hearing was unfair.

However, "[i]t is well-established that prison officials may not retaliate against inmates for exercising their constitutional rights." Baskerville v. Blot, 224 F. Supp. 2d 723, 731 (S.D.N.Y. 2002). At the same time, "because prisoner retaliation claims are 'easily fabricated,' and accordingly 'pose a substantial risk of unwarranted judicial intrusion into matters of general prison administration,' we are careful to require non-

conclusory allegations." Bennett v. Goord, 343 F.3d 133, 137 (2d Cir. 2003) (citing Dawes v. Walker, 239 F.3d 489, 491 (2d Cir. 2001)); see also Colon v. Coughlin, 58 F.3d 865, 872 (2d Cir. 1995) ("[W]e examine prisoners' claims of retaliation with skepticism and particular care." (citing Flaherty v. Coughlin, 713 F.2d 10, 13 (2d Cir. 1983))).

In order to prevail on a claim of retaliation, Jones must first show (1) that he engaged in constitutionally protected conduct, and (2) that the conduct was a substantial or motivating factor for the adverse actions taken by prison officials. See Bennett, 343 F.3d at 137; Gayle v. Gonyea, 313 F.3d 677, 682 (2d Cir. 2002). The burden then shifts to Defendants to show that Jones would have had a misbehavior report filed against him absent the retaliatory motivation. See Bennett, 343 F.3d at 137; Gayle, 313 F.3d at 682.

It is well-established that the filing of a grievance report by an inmate constitutes constitutionally protected conduct. See, e.g., Gayle, 313 F.3d at 682; Baskerville, 224 F. Supp. 2d at 731. The question then becomes whether Jones has established a causal connection between his grievances and the misbehavior report filed by

13

Officer Quick. In considering the existence of such a causal connection "a number of factors may be considered, including: (i) the temporal proximity between the protected activity and the alleged retaliatory act; (ii) the inmate's prior good disciplinary record; (iii) vindication at a hearing on the matter; and (iv) statements by the defendant concerning his motivation." Baskerville, 224 F. Supp. 2d at 732.

The close temporal proximity between Plaintiff's grievance and the misbehavior report is consistent with the existence of a causal connection. However, Jones's prior disciplinary record, as described in his Disciplinary Hearing, contains 21 Tier II dispositions and 11 Tier III dispositions since 1994. Knudsen Decl. Ex. F. Furthermore, based on the testimony of prison officials and inmates in the visiting room on September 7, 2008, Jones was found guilty at his Disciplinary Hearing of the violations set forth in the misbehavior report. These latter two factors weigh heavily against a finding that his grievance was the motivating factor for the misbehavior report filed against him.

Jones's sole evidence in support of a causal connection between his grievance and the misbehavior report is his assertion that Officer Quick threatened to fabricate a misbehavior report if he filed a grievance report. Jones has not, however, cited any additional facts on the record, such as the testimony of other inmates or officers on duty in the visiting room, to support his allegation. Officer Quick's alleged threat is also inconsistent with the finding at the Disciplinary Hearing that Plaintiff committed the violations set forth in the misbehavior report and his testimony that he otherwise had a good relationship with Officer Quick.

Viewing the factual record with "skepticism and particular care," Colon, 58 F.3d at 872, the Court finds Jones's single allegation to be insufficient, as a matter of law, to establish a causal connection between his grievance and the misbehavior report filed by Officer Quick. See Gallo, 22 F.3d at 1223-24. Because no genuine issue of material facts exists in connection with Plaintiff's claim of retaliation, summary judgment in Defendants' favor is appropriate.

**IV. CONCLUSION**

For the foregoing reasons, Defendants' motion for summary judgment is granted.

It is so ordered.

**New York, NY**
**January 15, 2010**

ROBERT W. SWEET
U.S.D.J.